UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OMAR ANDERSON,

                              Petitioner,

        v.

DANIEL MARTUSCELLO, Jr.,
Superintendent, Coxsackie Correctional
Facility,

                              Respondent.

No. 17-CV-9638 (KMK) (JCM)

ORDER ADOPTING REPORT &
RECOMMENDATION

Appearances:

Omar Anderson
Coxsackie, NY
*Pro Se Petitioner*

John J. Sergi, Esq.
Lisa M. Denig, Esq.
Westchester County District Attorney's Office
White Plains, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

        Omar Anderson ("Petitioner"), proceeding pro se, has filed a Petition for a Writ of

Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his April 17, 2014

conviction, following a jury trial in New York State Supreme Court, Westchester County

("County Court"), for one count of Assault in the Second Degree and one count of Attempted

Assault in the Second Degree.  (*See generally* Pet. for Writ of Habeas Corpus ("Pet.") (Dkt.

No. 1).)

        On August 3, 2016, Petitioner moved before the County Court to vacate his conviction

pursuant to New York Criminal Procedure Law § 440.10 ("440.10 Motion"), which the County

Court denied on October 31, 2016.  (*See* Resp't's Mem. of Law in Opp'n to Pet. ("Resp't's Opp'n") Exs. 3 (Dkt. No. 10-4) & 6 (Dkt. No. 10-7).)  The New York Supreme Court, Appellate Division, Second Department ("Second Department") denied Petitioner's motion for leave to appeal the County Court's denial of his 440.10 Motion on March 9, 2017.  (*Id.* Ex. 9 (Dkt. No. 10-10).)

Petitioner directly appealed his conviction to the Second Department on July 31, 2014; the Second Department affirmed the conviction on March 1, 2017.  *See People v. Anderson*, 148 A.D.3d 714 (App. Div. 2017).  The New York Court of Appeals denied Petitioner's motion for leave to appeal on May 10, 2017.  *See People v. Anderson*, 29 N.Y.3d 1028 (2017).

Respondent filed a Memorandum of Law opposing the Petition on March 21, 2018.  (*See* Resp't's Opp'n (Dkt. No. 10-1); Aff. in Opp'n to Pet. ("Resp't's Aff.") (Dkt. No. 10).)  Petitioner filed a Memorandum of Law in reply to Respondent's Opposition ("Petitioner's Reply") on June 15, 2018.  (*See* Mem. of Law in Reply to Opp'n ("Pet'r's Reply") (Dkt. No. 14).)

In a thorough Report and Recommendation ("R&R") dated January 29, 2021, Magistrate Judge Judith C. McCarthy ("Judge McCarthy") recommended that the Petition be denied in its entirety.  (*See* Report & Recommendation ("R&R") 1 (Dkt. No. 17).)  Petitioner filed Objections to the R&R on March 15, 2021, after seeking and receiving an extension of time to object.  (*See* Pet'r's Obj's to R&R ("Obj's") (Dkt. No. 20).)  Respondent has not responded to the Objections. After a review of the R&R and Petitioner's Objections, the Court adopts the result recommended in the R&R and denies the Petition.

I.  BACKGROUND

The factual and procedural background of this case is set forth in the R&R and the Court assumes the Parties' familiarity therewith.  (*See* R&R 1–9.)  The Court nevertheless summarizes the relevant facts.

On October 6, 2012, Petitioner entered the Super Star Deli, located at 203 Ashburton Avenue, Yonkers, New York, evidently in search of certain grocery items.  (Resp't's Aff. 2.) Petitioner asked one of the employees, Jason Lopez ("Lopez"), if the store had any limes, to which Lopez responded that there were no limes.  (*Id.*)  Petitioner and Lopez began arguing, which escalated into a near-violent altercation involving Petitioner, Lopez, and other deli employees, with Petitioner attempting to arm himself with a bottle.  (*Id.* at 2–3.)  Lopez and the other employees were ultimately able to remove Petitioner from the store, but Petitioner stated that he would return in five minutes.  (*Id.* at 3.)  About five minutes later, Petitioner returned to the store with a wooden baseball bat and reengaged Lopez, repeatedly striking Lopez with the bat.  (*Id.*)  During the altercation, Petitioner stabbed Lopez in his lower left back area with a knife that was on the deli counter.  (*Id.*)  Lopez then barricaded himself in a storage room, where he called Officer Richard Meyers ("Meyers") of the Yonkers Police Department ("YPD") (who had given the deli employees his personal cell phone number) and told Meyers that "someone was trying to hit [him]."  (*Id.* at 4, 11.)  Meyers and his partner immediately responded to Lopez's call and headed to the store.  (*Id.* at 5.)  While en route, Meyers heard on the YPD radio dispatch that the store's holdup alarm had been activated and that an employee had called 911. (*Id.*)

After Lopez called Meyers, Petitioner's cousin entered the store, armed with an aluminum baseball bat, and he and Petitioner approached the storage room where Lopez was

sheltered.  (*Id.* at 4.)  Petitioner then broke down the storage room door with his baseball bat, and Lopez fled through an emergency exit.  (*Id.* at 4.)  Petitioner and his cousin exited the store to pursue Lopez, which Meyers witnessed as he arrived at the store.  (*Id.* at 5.)  A chase ensued, and Petitioner and his cousin were arrested.  (*Id.*)  Shortly after Petitioner and his cousin were taken into custody, Meyers received a dispatch on the YPD radio dispatch that there was a stabbing victim at 203 Ashburton Avenue.  (Pet'r's Reply Ex. B 1.)[1]  Lopez identified both Petitioner and his cousin as his assailants shortly after Petitioner and Petitioner's cousin's arrests, before he was taken to Jacobi Hospital to be treated for his stab wound.  (Resp't's Aff. 6.)

Petitioner was charged with Assault in the Second Degree, Attempted Assault in the Second Degree, two counts of Criminal Possession of a Weapon in the Fourth Degree, and Menacing in the Second Degree.  (*Id.* at 9.)  At trial, the prosecution called a number of witnesses, including Meyers, who, in response to a question on direct examination about why police dispatch instructed Meyers and the other responding units to use caution, mistakenly testified that he received a police dispatch that there was "a stabbing victim" at the deli *before* he arrested Petitioner.  (*Id.* at 10–11.)  Defense counsel objected to the prosecution's question, and the County Court instructed the jury that the content of the transmission was "not being offered for the truth of what's in the transmission," but rather "just to explain what the officer did," and that it was "up to [the jury]" to determine whether to credit the evidence and what weight to give to it.  (*Id.*; Pet'r's Reply Ex. E 153:12-18.)  On April 17, 2014, the jury found Petitioner guilty of Assault in the Second Degree and Attempted Assault in the Second Degree.  (Resp't's Aff. 12.)

---

[1] When referring to Exhibit B to Petitioner's Reply, the Court refers to the native pagination at the top right-hand corner of each page, which is in the format of "page _ of _."

On July 31, 2014, Petitioner directly appealed his conviction; he submitted his brief on February 19, 2016, which—as relevant to the instant Petition—argued that the County Court erred in admitting Meyers' testimony concerning the dispatcher's statement that there was "a stabbing victim" at the store, since this the statement was hearsay.  (*Id.* at 15; *see also* Resp't's Opp'n Ex. 1 (Dkt. No. 10-2) 35–39.)  Petitioner also claimed that the admission of this statement violated his Sixth Amendment right to confrontation.  (Resp't's Aff. 15; Resp't's Opp'n Ex. 1 39–40.)  On August 3, 2016, Petitioner filed a 440.10 Motion with the County Court to vacate his conviction on the ground that the prosecution knowingly misled the County Court by stating that Meyers received the dispatch about "a stabbing victim" before Petitioner's arrest, when the dispatch log (attached to Petitioner's 440.10 Motion, though not introduced at trial) demonstrated that this dispatch came after Petitioner's arrest.  (Resp't's Aff. 15–16; *see also* Resp't's Opp'n Ex. 3 6–9.)[2]  Petitioner also repeated his arguments that the dispatcher's statement constituted inadmissible hearsay.  (Resp't's Aff. 16; Resp't's Opp'n Ex. 3 7–8.)

On October 31, 2016, the County Court denied Petitioner's 440.10 Motion, and on March 1, 2017, the Second Department unanimously affirmed the judgment of conviction.  (Resp't's Aff. 17, 18; Resp't's Opp'n Ex. 6.)  *See also Anderson*, 148 A.D.3d at 714.  On March 9, 2017, the Second Department denied Petitioner's application for leave to appeal the determination of the 440.10 Motion, and on May 10, 2017, the New York Court of Appeals denied Petitioner's application for leave to appeal the Second Department's affirmance of his conviction.  (Resp't's Aff. 18, 19; Resp't's Opp'n Ex. 9.)  *See also Anderson*, 29 N.Y.3d at 1028.

---

[2] When citing to Exhibit 3 to Respondent's Opposition, the Court refers to the ECF-stamped page numbers at the top right-hand corner of each page.

Petitioner filed the Petition on December 18, 2017.  (*See* Dkt. Nos. 1, 6.)  Judge

McCarthy issued the R&R on January 29, 2021, recommending that this Court deny Petitioner's

request for relief and dismiss the Petition in its entirety.  (*See* R&R 1.)  Petitioner subsequently

filed the Objections.  (*See* Dkt. No. 20.)

## II.  DISCUSSION

### A.  Applicable Law

#### 1.  Review of a Magistrate Judge's R&R

A district court reviewing a report and recommendation addressing a dispositive motion

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by a

magistrate judge."  28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of

Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and

recommendation.  The objections must be "specific" and "written," FED. R. CIV. P. 72(b)(2), and

must be made "[w]ithin 14 days after being served with a copy of the recommended disposition,"

*id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant

to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* FED. R. CIV. P. 6(d), for a total of

seventeen days, *see* FED. R. CIV. P. 6(a)(1).

Where a party submits timely objections to a report and recommendation, as Petitioner

has done here, the Court reviews de novo the parts of the report and recommendation to which

the party objected.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).  The district court "may

adopt those portions of the . . . report [and recommendation] to which no 'specific written

objection' is made, as long as the factual and legal bases supporting the findings and conclusions

set forth in those sections are not clearly erroneous or contrary to law."  *Eisenberg v. New Eng.*

*Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting FED. R. CIV. P. 72(b)(2)).

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser standard than other parties." (italics omitted)).  Because Petitioner is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics and quotation marks omitted).  However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

### 2.  Standard of Review

Petitions for writs of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that a state prisoner may seek habeas corpus relief in federal court "on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a).  "The writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)).  In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam);

*see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("The petitioner carries the burden of proof.").

A decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A decision is "an unreasonable application of clearly established Federal law" if a state court "correct identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08 (alterations and quotation marks omitted). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citations and quotation marks omitted); *see also id.* (noting that a petitioner must show a state court ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quotation marks omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the

court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen*, 563 U.S. at 202–03 ("Even if the [Federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*— we . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir. 1997) ("When reviewing a habeas petition, the factual findings of the New York Courts are presumed to be correct." (alteration and quotation marks omitted)). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same).

Finally, only Federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in

behalf of a person in custody pursuant to the judgment of a State court only on the ground that he

is in custody in violation of the Constitution or laws or treaties of the United States.").

### 3.  Procedural Requirements for Habeas Corpus Relief

"Habeas review is an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621

(1998), and a petitioner seeking a writ of habeas corpus must comply with the strict requirements

of AEDPA, *see* 28 U.S.C. § 2254.  Before the Court reviews the merits of a habeas corpus

petition, the Court must determine whether Petitioner complied with the procedural requirements

set forth in 28 U.S.C. §§ 2244 and 2254.

### a.  Timeliness

AEDPA imposes upon a petitioner seeking federal habeas relief a one-year statute of

limitations.  *See* 28 U.S.C. § 2244(d)(1).  The statute of limitations is tolled if any state post-

conviction proceedings are pending after the conviction becomes final.  *See* 28 U.S.C.

§ 2254(d)(2).  The limitations period is also subject to equitable tolling, which is warranted only

when a petitioner has shown "(1) that he [or she] has been pursuing his [or her] rights diligently,

and (2) that some extraordinary circumstances . . . prevented timely filing." *Finley v. Graham*,

No. 12-CV-9055, 2016 WL 47333, at *5 (S.D.N.Y. Jan. 4, 2016) (alterations in original)

(quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

### b.  Procedural Bar

A federal court "will not review questions of federal law presented in a habeas petition

when the state court's decision rests upon a state-law ground that is independent of the federal

question and adequate to support the judgment."  *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir.

2011) (quotation marks omitted).  A judgment is "independent" if the "last state court rendering

a judgment in the case clearly and expressly states that its judgment rests on a state procedural

bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quotation marks omitted).  A procedural bar is "adequate . . . if it is based on a rule that is firmly established and regularly followed by the state in question." *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006) (quotation marks omitted).  In "exceptional cases," the "exorbitant application of a generally sound [state procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

### c.  Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . .").  To satisfy this requirement, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the state, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").  This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen. of State of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999).

There are two components to the exhaustion requirement.  *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . .").  First, "a petitioner [must] fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (alterations and quotation marks omitted); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146, at *5 (E.D.N.Y. July 31, 2012) (same).  This requirement is satisfied if the claim is presented in a way that is "likely to alert the [state] court[s] to the claim's federal nature," *Carvajal*, 633 F.3d at 104 (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)), and the state courts are "apprise[d] . . . of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition," *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005); *see also Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same).  In other words, a state prisoner need not cite "chapter and verse of the Constitution" to satisfy this requirement.  *Carvajal*, 633 F.3d at 104 (quotation marks omitted).  A petitioner may satisfy this requirement by:

> (a) reliance on pertinent federal cases employment constitutional analysis[;]
> (b) reliance on state cases employing constitutional analysis in like fact situations[;]
> (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution[;] and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* (quotation marks omitted).  However, it is "not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted).  Rather, the claims must be made in such a way so as to give the state courts a "fair opportunity to apply

controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds*, *Daye v. Att'y Gen.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011).  In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez*, 394 F.3d at 74.  If the petitioner fails to exhaust his or her state remedies through the entire appeal process, he or she may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods.  *See Klein*, 667 F.2d at 282–83 (noting that, "where the petitioner did not utilize all the appellate procedures of the convicting state to present his claim . . . the petitioner must utilize available state remedies for collateral attack of his conviction in order to satisfy the exhaustion requirement"); *Bernardez v. Bannon*, No. 12-CV-4289, 2016 WL 5660248, at *3 (S.D.N.Y. Sept. 29, 2016).  For example, in New York a defendant may challenge a conviction based on matters not in the record that could not have been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10, but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised in a direct appeal . . . . It is only when a defendant's claim hinges upon facts

13

outside the trial record, that he may collaterally attack his conviction by bringing a claim under [New York Criminal Procedure Law] § 440.10.), *adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).  In addition, New York permits only one application for direct review.  *See Jiminez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under New York law] . . . . ").  "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals."  *Sparks v. Burge*, No. 12-CV-8270, 2012 WL 4479250, at *4 (S.D.N.Y. Sept. 18, 2014).

Accordingly, in those situations, a petitioner no longer has any available state court remedy, and the claims are therefore deemed exhausted, but procedurally defaulted.  *See Carvajal*, 633 F.3d at 104 ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we must deem the claim procedurally defaulted." (alteration and quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting the reality that deeming an unpresented claim to be exhausted is "cold comfort").  A dismissal of a habeas petition on such grounds is a "disposition . . . on the merits."  *Carvajal*, 633 F.3d at 104 (quotation marks omitted).  "An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted." *Id.* (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) (holding that "a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of a cause and prejudice to excuse the default," or showing that the petitioner "is actually innocent of the underlying offense").

14

B.  Application

Petitioner makes two arguments in support of his Petition: (1) the trial court wrongfully

admitted "inadmissible hearsay" from Meyers concerning the statement made by a police

dispatcher that there was a stabbing victim at 203 Ashburton Avenue; and (2) the trial court's

wrongful admission of this statement violated Petitioner's Sixth Amendment right to

confrontation.  (Pet. ¶ 12; Pet'r's Reply 7–13.)  Judge McCarthy dismissed both claims.  (*See*

R&R 14–22.)

Petitioner objects to Judge McCarthy's rejection of Petitioner's claims, appearing to

argue: (1) that Petitioner's case falls within an exception to the general rule that a state court's

determination of a state law evidentiary issue is not subject to federal habeas review because the

County Court's admission of the dispatcher's statement and subsequent limiting instruction to

the jury were so flawed so as to deprive Petitioner of a fundamentally fair trial, (Obj's 5–7); and

(2) that the admission of the dispatcher's statement violated Petitioner's Sixth Amendment right

to confrontation because Meyers "was acting as a witness when he was testifying about a

stabbing," (*id.* at 7–10).  The Court will address each in turn.

1.  Hearsay Claim

In the Petition and Petitioner's Reply, Petitioner repeatedly raised a number of arguments

concerning the allegedly "[e]rroneous and [p]rejudicial [r]uling" made by the County Court to

allow Meyers to testify to the content of the police dispatch Meyers received shortly after

Petitioner was arrested.  (Pet. ¶ 12.)  At trial, the County Court allowed Meyers to testify to the

content of a dispatch explaining "[t]hat there was a stabbing victim at 203 Ashburton Avenue"

over Petitioner's objection "just to explain what the officer did" in responding to the incident and

ultimately arresting Petitioner, and instructed the jury that the dispatcher's statement was "not

being offered for the truth of what[] [was] in the transmission." (Pet'r's Reply Ex. E 153:19-20, 153:12-15.)  However, Petitioner argues that the police dispatch log from that evening demonstrates that, in fact, Meyers received the dispatch in question 35 seconds after Petitioner was arrested, (*see* Pet'r's Reply Ex. B 1); thus, Meyers' receipt of the dispatch could not have "explain[ed] what [Meyers] did" in responding to the incident and ultimately arresting Petitioner, (Pet. ¶ 12; Pet'r's Reply 11).  Moreover, Petitioner claims that Meyers had already testified that Meyers came to the scene after receiving Lopez's call that "someone trying to hit him [sic]," so, according to Petitioner, Meyers' behavior in responding to the incident and ultimately arresting Petitioner required no further explanation.  (Pet. ¶ 12; *see also* Pet'r's Reply 8–9, 11.)  Petitioner argues that because of this, the dispatcher's statement could only have been offered for its truth (*i.e.*, to establish that there had been a stabbing) and thus, it was inadmissible hearsay and prejudiced Petitioner.  (*See* Pet'r's Reply 2–3, 11–13.)  Petitioner also argues that the County Court's limiting instruction had the effect of compounding the prejudice to Petitioner, rather than eliminating it.  (*See id.* at 11–12.)

Judge McCarthy concluded that Petitioner's claim was not subject to federal habeas review regardless of the propriety of the County Court's determinations, because the County Court's decision to admit the dispatcher's statement and to provide a limiting instruction concerned the application of state evidentiary rules and Petitioner failed to demonstrate that the alleged error "deprived him of a *fundamentally fair* trial."  (R&R 15 (quoting *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983)) (alteration omitted).)[3]  Judge McCarthy correctly explained

---

[3] In his Objections, Petitioner writes that "[Judge McCarthy] did not address [P]etitioner's issues with regards to the [County Court] jury instruction in her DISCUSSION part of the Report and Recommendation," and "ask[s] this Court to also review [the] [County Court's] limiting jury instructions under the exception to the general rule that governs state court interpretation of the propriety of a jury instruction under state law."  (Obj's 6.)  While Petitioner

that for an alleged evidentiary error to meet this standard, "the [alleged] trial error must have had 'substantial and injurious effect or influence in determining the jury's verdict.'" (R&R 15 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).) In assessing the gravity of an alleged error, courts consider a variety of factors, the most important of which is the strength of the prosecution's case. (*Id.*) Judge McCarthy reasoned that because the prosecution "adduced overwhelming evidence of Petitioner's guilt at trial" separate and apart from the dispatcher's statement, Petitioner's claim would not merit habeas review even if the County Court's decision to admit the statement and the subsequent jury instruction was in error. (*Id.* at 16.)

In objecting to Judge McCarthy's conclusion, Petitioner appears to acknowledge that "a federal court may only review a state application of state law . . . [w]here [a] petitioner can show that the error complained of deprived him of a fundamentally fair trial," but argues that he has met that heavy burden. (Obj's 2.) In so doing, Petitioner reiterates many of the arguments made in the Petition and Petitioner's Reply, including that "Meyers' actions did not need an explanation," "Meyers did not know about any stabbing until after [P]etitioner's arrest," and "[the] [County Court's] limiting instructions to the jury validate[d] . . . Meyer's [sic] deceptive, inaccurate and prejudicial statement about a stabbing." (*Id.* at 3–5.) He also argues that "[Judge McCarthy's] assertions that the prosecution presented highly probative physical and testimonial

---

is correct that Judge McCarthy did not include a separate analysis of the jury instruction in the R&R, the propriety of a jury instruction is an evidentiary question, and thus, Judge McCarthy's analysis of Petitioner's claim based upon the County Court's jury instruction is encompassed by her wider analysis of Petitioner's hearsay claim. (*See* R&R 15–17.) As such, this Court will also consider Petitioner's Objections concerning the County Court's admission of the dispatcher's statement and the County Court's jury instruction together. *See Estelle*, 502 U.S. at 71–72 ("[T]he fact that the [jury] instruction was allegedly incorrect under state law is not a basis for habeas relief [because] the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules. . . . The only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." (citation, quotation marks, and alteration omitted)).

evidence of [P]etitioner's guilt are false," claiming that the only evidence the prosecution

adduced at trial concerning the stabbing was Lopez's testimony and the at-issue testimony from

Meyers. (*Id.* at 6.)[4]

The Court agrees with Judge McCarthy's conclusion that Petitioner failed to demonstrate

that the County Court's alleged error in admitting the dispatcher's statement deprived him of a

fundamentally fair trial and thus, that Petitioner is not entitled to habeas relief on his hearsay

claim. Petitioner's objections appear to focus on Petitioner's oft-repeated arguments that the

County Court's decision to admit the dispatcher's statement was improper because the statement

constituted inadmissible hearsay. However, Judge McCarthy's conclusion was not based on a

finding that the County Court's decision was appropriate; indeed, she specifically declined to

rule on whether the admission of the dispatcher's statement at trial was a proper application of

New York's rules of evidence. (*See* R&R 16 & n.12.) This Court sees no reason not to do the

same, because regardless of the propriety of the County Court's decision, Petitioner has not

demonstrated that the County Court's alleged error in admitting the dispatcher's statement "had

substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S.

---

[4] Petitioner also argues that Meyers' allegedly improper testimony "prejudiced [P]etitioner in such a way it infected [P]etitioner's entire trial with error of constitutional dimensions that cause and prejudice is established," citing to *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012). (Obj's 4.) Petitioner appears to be conflating the standard for overcoming procedural default (demonstrating "either 'cause' and actual 'prejudice,' or . . . 'actual innocence,'" *Gutierrez*, 702 F.3d at 111) and the standard for establishing that a state court determination of state law merits federal habeas review (demonstrating that the alleged error "deprived [petitioner] of a *fundamentally fair* trial," *Taylor*, 708 F.3d at 891). In light of Petitioner's pro se status, the Court will construe Petitioner's "cause" and "prejudice" argument to the extent offered in support of his hearsay claim as an argument that Petitioner was deprived a fundamentally fair trial. *See Triestman*, 470 F.3d at 474 (explaining that pro se submissions shall be "construed liberally and interpreted so as to raise the strongest arguments that they suggest" (italics and quotation marks omitted)).

at 623 (citation omitted), given the sheer volume of evidence presented to support Petitioner's

conviction at trial, (*see* R&R 16–17).

Indeed, Petitioner's assertion that "[n]o other evidence outside Lopez's testimony about a

stabbing and . . . Meyers' statement about a stabbing was ever submitted to the jury," (Obj's 6),

is belied even by Petitioner's own submissions to this Court.  In Petitioner's Reply, Petitioner

wrote that "Petitioner Anderson stands by the facts contained in his Direct Appeal, CPL 440.10

and Leave to Appeal to the Court Of Appeals," (Pet'r's Reply 1); Petitioner then attached the

statement of facts presumably submitted in conjunction with Petitioner's appeal to the Second

Department, (*id.* at 2 & Ex. A).  In this statement of facts, Petitioner describes, among other

things, the testimony of Samantha Chernoguz, a DNA analyst with the Westchester County

Forensic Laboratory, who testified that the knife recovered at the scene "had . . . Lopez'[s] blood

stains on it."  (Pet'r's Reply Ex. A 25–26.)  He goes on to describe the testimony of Dr. Danielle

Friedman, a doctor at Jacobi Hospital (where Lopez was taken to be treated for his injuries), who

testified to the content of Lopez's medical records, which reflected the fact that Lopez had

suffered a "stab wound to the left mid back."  (*Id.* at 27–28.)  Petitioner also recounted his own

testimony at trial, in which he explained that when he returned to the deli with a baseball bat

after the initial altercation, he "wasn't thinking straight," and admitted to at least "pick[ing] up

the knife," "pointing at [another deli employee] with the knife," and "pacing back and forth

through the store" with the knife.  (*Id.* at 30–31.)  And, Petitioner describes the testimony of

Lopez, whose credibility the Court understands Petitioner questions, (*see, e.g.*, Obj's 3), but who

clearly testified that Petitioner stabbed him, (*see* Pet'r's Reply Ex. A 13).

In short, there was substantial evidence submitted to the jury separate and apart from the

dispatcher's statement and on which the jury could have convicted Petitioner for assault in the

second degree.  Petitioner may disagree with the way in which the jury weighed the evidence or

with the credibility assessments that the jury made, but "assessments of the weight of the

evidence or the credibility of witnesses are for the jury and not grounds for reversal on habeas

appeal."  *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (quoting *Maldonado v.

Scully*, 86 F.3d 32, 35 (2d Cir. 1996)) (alterations omitted); *id.* at 470–71 (denying habeas

petition based on an argument that a particular witness's testimony was "incredible" because "a

habeas court must defer to the assessments of the weight of the evidence and credibility of the

witnesses that were made by the jury" (quoting *Frazier v. New York*, 187 F. Supp. 2d 102, 109–

10 (S.D.N.Y. 2002))); *see also Steinhilber v. Kirkpatrick, M.*, No. 18-CV-1251, 2020 WL

9074808, at *34 (S.D.N.Y. Aug. 21, 2020) ("[I]t is well established that a weight of the evidence

claim is based on state law and is not cognizable on federal habeas review." (collecting cases)),

*report and recommendation adopted sub. nom*, *Steinhilber v. Kirkpatrick*, 2021 WL 1254554

(S.D.N.Y. Apr. 5, 2021).[5]

Petitioner is thus not entitled to habeas relief on his hearsay claim, and Judge McCarthy's

recommendation on this point is adopted.

---

[5] While not dispositive, the Court notes that Petitioner implies that the dispatcher's
statement had much more probative value than is appropriate.  Petitioner argues in his Objections
that the dispatcher's statement "directly implicate[d] [P]etitioner in a stabbing."  (Obj's 6.)
However, Meyers' testimony concerning the statement was, in full: "Q  And did you hear any
further radio transmissions with respect to 203 Ashburton Avenue?  A  For whatever officers
were responding to use caution.  Q  Did they indicate why you should use caution?  A  Yes.
Q  What was said?  [Objection and limiting instruction.]  A  That there was a stabbing victim at
203 Ashburton Avenue," (Pet'r's Reply Ex. E 153:5-20).  Thus, even if it had been offered for its
truth, Meyers' testimony about the statement did not "directly implicate [P]etitioner in a
stabbing" at all.  If anything, all the statement would have done was corroborate that a stabbing
took place, which, given the physical evidence submitted at trial, was not reasonably in dispute.

2.  Confrontation Clause Claim

Petitioner also argues that the County Court's admission of the dispatcher's statement violated his Sixth Amendment right to confrontation because "[t]he caller [sic] did not testif[y] at trial and [P]etitioner did not have the opportunity for cross-examination and the jury did not have the chance to look at [him], and judge his demeanor upon the stand and the manner in which he g[ave] his testimony [to determine] whether he is worthy of belief." (Pet'r's Reply 7.)  Judge McCarthy concluded that Petitioner's Confrontation Clause claim did not merit habeas relief for two reasons: (1) Petitioner's Confrontation Clause claim is procedurally barred based on the Second Department's ruling that this argument was "unpreserved for appellate review and, in any event, without merit," *Anderson*, 148 A.D.3d at 715; and (2) even if Petitioner's Confrontation Clause claim was not procedurally barred, the claim is meritless because the Second Department's ruling was neither contrary to, nor an unreasonable application of, federal law, since (a) the statement was not offered for its truth, (b) the statement was not testimonial, and (c) any alleged error in admitting the statement was harmless given the strength of the prosecution's case. (*See* R&R 19–22.)

Liberally construed, Petitioner argues that the County Court's decision to admit the dispatcher's statement was "contrary to . . . clearly established federal law," *Epps*, 687 F.3d at 50 (quoting 28 U.S.C. § 2254(d)(1)), namely, the Confrontation Clause.  Petitioner specifically objects on two grounds.  First, Petitioner appears to argue that the statement was testimonial because the dispatcher's statement's primary purpose was not to enable police assistance to meet an ongoing emergency, since the statement was made after Petitioner was already in police custody. (Obj's 7.)  Petitioner also seems to argue that to the extent the statement was not testimonial at the time it was made, it became testimonial when Meyers testified about it at trial.

21

(*Id.* at 8.)  Petitioner further argues, again, that because the statement "did not and could not

explain why . . . Meyers arrested [P]etitioner," "[t]hat leaves the alternative": that the statement

was offered for its truth.  (*Id.* at 8–9.)  Second, Petitioner argues that his Confrontation Clause

claim is not procedurally barred because "even if [P]etitioner did not exhaust his claim by

expressly alleging a violation of his Sixth Amendment Confrontation Clause right at trial,

[P]etitioner always maintained he did not stab Lopez."  (*Id.* at 9–10.)

On Petitioner's Confrontation Clause claim, the Court again agrees with Judge McCarthy

and finds that Petitioner is not entitled to habeas relief.  The Court will address each of

Petitioner's objections in turn.

### a.  The Dispatcher's Statement Was Not Testimonial

As Judge McCarthy explained, the Confrontation Clause bars the use of "testimonial"

out-of-court statements offered against a defendant in lieu of in-court testimony subject to cross-

examination.  (*See* R&R 20.)  While the Supreme Court has declined "to spell out a

comprehensive definition of 'testimonial,'" it has explained that "at a minimum," the term

applies to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and

to police interrogations."  *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *accord DeJesus v.

Perez*, 813 F. App'x 631, 633 (2d Cir. 2020) (summary order).  More broadly, statements are

considered "testimonial" when they are "made under circumstances which would lead an

objective witness reasonably to believe that the statement would be available for use at a later

trial."  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (quotation marks omitted);

*see also Michigan v. Bryant*, 562 U.S. 344, 354 (2011) ("An accuser who makes a formal

statement to government officers bears testimony in a sense that a person who makes a causal

remark to an acquaintance does not." (quotation marks and alteration omitted)).  Finally, the

admission of a testimonial statement from an out-of-court witness at trial only runs afoul of the Confrontation Clause if the statement is offered to establish the truth of the matter asserted. *Cf. Crawford*, 541 U.S. at 59, n.9 ("The [Confrontation] Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *accord United States v. Stewart*, 433 F.3d 273, 291 (2d Cir. 2006) (same).

At the outset, Petitioner appears to misunderstand which individual he was allegedly denied the right to confront in violation of the Confrontation Clause. Petitioner seems to argue in his Objections that he had the right to confront Meyers, since Meyers "was acting as a witness against [P]etitioner," and this right was denied. (Obj's 7–8.) There is no question that Meyers was acting as a witness against Petitioner, since Meyers testified on behalf of the prosecution at trial, but there is also no question that Petitioner was provided with the opportunity to confront Meyers and, in fact, did confront Meyers: the trial transcript demonstrates that Petitioner's attorney cross-examined Meyers. (*See* Pet'r's Reply Ex. E 161:2-165:5.) *See also Crawford*, 541 U.S. at 59 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."). The pertinent question for purposes of Petitioner's Sixth Amendment claim is whether the *police dispatcher*—the individual who made the out-of-court statement concerning a stabbing, introduced via Meyers' testimony—was acting as a witness against Petitioner at the time he or she made the statement.

"In the end, the question is whether, in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony." *Ohio v. Clark*, 576 U.S. 237, 245 (2015). Given the circumstances here—a general statement that a stabbing occurred made over a police dispatch during a period of time in which

many such "status update" statements were made in quick succession, (*see* Pet'r's Reply Ex. B

1)—the Court agrees with Judge McCarthy that at the time the dispatcher made the at-issue

statement, he or she "was neither acting as a witness," "testifying," "nor did he [or she] expect

that his [or her] statement would be used in a future proceeding," (R&R 21); *see also Currie v.*

*Graham*, No. 17-CV-1227, 2019 WL 2451762, at *6, *9 (E.D.N.Y. June 12, 2019) (noting that

"the radio call [that the arresting officer] . . . received describ[ing] [the physical appearance of]

one of the perpetrators. . . was non-testimonial, which would mean the absence of any

Confrontation Clause issue at all").  Moreover, given the County Court's explicit instruction that

the statement was "not being offered for the truth of what's in the transmission," (Pet'r's Reply

Ex. E 153:12-13), the Court further agrees with Judge McCarthy that the statement was not

offered for its truth and thus, did not implicate Petitioner's Sixth Amendment rights, (*see* R&R

21 (citing *Stewart*, 433 F.3d at 291)).

Petitioner argues that because "[P]etitioner was in custody" at the time the statement was

made, "it can be said that there was no more ongoing emergency at hand for the police to

resolve."  (Obj's 7.)  While Petitioner's implication is correct in principle, since "'[s]tatements

are nontestimonial when made in the course of police interrogation under circumstances

objectively indicating that the primary purpose of the interrogation is to enable police assistance

to meet an ongoing emergency,'" *Bryant*, 562 U.S. at 356 (quoting *Davis v. Washington*, 547

U.S. 813, 822 (2006)), a statement does not need to be made under such circumstances for it to

be considered nontestimonial.  In other words, statements made with the purpose of enabling

police assistance to meet an ongoing emergency are a *type* of nontestimonial statement, but do not encompass all nontestimonial statements.[6]

     Moreover, the Court agrees with Judge McCarthy that even if the dispatcher's statement was testimonial and offered for truth and thus, the County Court's admission of the statement violated Petitioner's right to confrontation, this error was harmless.  (*See* R&R 21–22.) Petitioner attempts to argue that "an error of this constitutional dimension prejudiced [P]etitioner in that it cannot be considered harmless on habeas review," (Obj's 9), but this assertion is directly controverted by Supreme Court precedent, *see Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1985) (holding that "Confrontation Clause errors" are "subject to . . . harmless-error analysis"); *accord Perkins v. Herbert*, 596 F.3d 161, 174 (2d Cir. 2010) (same).  In determining whether a Confrontation Clause error was harmless, courts consider a number of factors, the most important of which is "the strength of the prosecution's case."  *Perkins*, 596 F.3d at 177 (quotation marks omitted).  As explained above, the prosecution submitted ample evidence to the jury separate and apart from the dispatcher's statement on which the jury could have based Petitioner's conviction, and thus, the Court finds that any Confrontation Clause error in admitting the statement was harmless.

### b.  Petitioner's Confrontation Clause Claim Is Procedurally Barred

     Aside from the questionable merits of Petitioner's Confrontation Clause claim, the Court also finds that—consistent with Judge McCarthy's report and recommendation—Petitioner's

---

[6] While the instant ruling does not rest on a finding that the statement was made to enable police assistance to meet an ongoing emergency, the Court notes that Petitioner's argument that there was no ongoing emergency once he was arrested and in police custody belies his argument that Petitioner did not commit the stabbing.  If Petitioner was not the perpetrator, then surely the emergency would have been ongoing after his arrest; the true perpetrator would still have been at large.

Confrontation Clause claim is procedurally barred.  As explained above, a federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Downs*, 657 F.3d at 101.  Here, the Second Department explicitly stated that Petitioner's Confrontation Clause claim was "unpreserved for appellate review," *Anderson*, 148 A.D.3d at 715, thus, the Second Department's decision on Petitioner's Confrontation Clause claim was based on an independent and adequate state law ground: Petitioner's failure to preserve his Confrontation Clause claim for appellate review, as required by New York Criminal Procedure Law § 470.05, *see People v. Perez*, 9 A.D.3d 376, 377 (N.Y. App. Div. 2004) ("Although the defendant objected to the testimony at issue, he did not specify the ground now raised on appeal.  Therefore, the issue of whether he was deprived of his right to confrontation is unpreserved for appellate review." (collecting cases)); *accord Chrysler v. Guiney*, 14 F. Supp. 3d 418, 460 (S.D.N.Y. 2014) ("[T]o preserve a Confrontation Clause challenge on appeal to a New York court, trial counsel had to object specifically on Confrontation Clause grounds.").  While the Second Department did also find that Petitioner's Confrontation Clause was "in any event, without merit," *Anderson*, 148 A.D.3d at 715, the Second Circuit has made clear that "where a state court says that a claim is 'not preserved for appellate review' and then rule[s] 'in any event' on the merits, such a claim is not preserved," *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 n.4 (2d Cir. 2000) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir. 1996)); *accord Grant v. Bradt*, No. 10-CV-394, 2012 WL 3764548, at *3 (S.D.N.Y. Aug. 30, 2012) (same).

In his Objections, Plaintiff argues that Judge McCarthy's finding that "[P]etitioner's Confrontation Clause claim is procedurally barred is without merit," because "even if [P]etitioner did not exhaust his claim by expressly alleging a violation of his Sixth Amendment

Confrontation Clause right at trial, [P]etitioner always maintained he did not stab Lopez."  (Obj's 9.)  However, the merit or wisdom of the Second Department's determination that Petitioner's Confrontation Clause claim was unpreserved for appellate review is immaterial; the Second Department's determination was based on an independent and adequate state law ground and thus, Petitioner's claim for habeas relief is procedurally barred.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.")

The only way that Petitioner can overcome this procedural bar is if he can demonstrate "'cause for the default and prejudice'" or that he is "'actually innocent' of the crime for which he was convicted," *Carvajal*, 633 F.3d at 104 (quoting *Aparicio*, 269 F.3d at 90), through "new reliable evidence," *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Petitioner can neither establish "cause" and "prejudice," nor that he is "actually innocent."  A habeas petitioner can establish "cause" if he or she can demonstrate that "some objective factor, external to [t]he [p]etitioner's defense, interfered with his [or her] ability to comply with a state procedural rule," *Gutierrez*, 702 F.3d at 111–12, but as Judge McCarthy observed, (R&R 19–20), Petitioner has offered no explanation for his failure to preserve his Confrontation Clause claim at trial.  Given that Petitioner cannot demonstrate "cause," it is unnecessary for the Court to determine whether he has demonstrated "prejudice," but as explained above, even if the County Court's decision to admit the dispatcher's statement did violate Petitioner's Confrontation Clause rights, this error was harmless.  As such, Petitioner cannot demonstrate that this alleged error "resulted in 'substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions,'" as required to establish prejudice.  *Gutierrez*, 702 F.3d at 112 (alteration in original) (quoting *Murray v. Carrier*, 477 U.S. 478, 494 (1986)).  And, Petitioner has proffered no "new reliable

27

evidence" demonstrating that he is actually innocent of assault in the second degree.  *Schlup*, 513 U.S. at 324.

In sum, the Court finds that the dispatcher's statement was not testimonial and thus, the County Court's decision to admit the statement did not constitute a violation of Petitioner's Sixth Amendment right to confrontation, let alone an "extreme malfunction[] in the state criminal justice system[]" sufficient to merit federal habeas relief.  *Harrington*, 562 U.S. at 102–03. Moreover, even if Petitioner's right to confrontation was violated, the error was harmless.  And finally, Petitioner's Confrontation Clause claim fails for the separate and independent reason that it is procedurally barred.  Judge McCarthy's recommendation on this point is also adopted.

## III.  Conclusion

The Court, having conducted a thorough review of the remainder of the R&R, finds no error, clear or otherwise.  The Court therefore adopts the outcome of Judge McCarthy's R&R. Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Patrol*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a [petitioner's] good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it was not taken in good faith).

The Clerk of the Court is respectfully directed to enter judgment in favor of Respondent, send a copy of this Order to Petitioner at the address listed on the docket, and close the case.

SO ORDERED.

DATED:      September 27, 2021
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE